UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| HERAEUS KULZER | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:09-MC-275 CAN |
| BIOMET INC., *et al.*, | ) | |
| Defendants | ) | |

**OPINION AND ORDER**

On December 30, 2008, Heraeus Kulzer GmbH ("Heraeus") filed a suit in Germany against Respondents, Biomet Inc. and Biomet Orthopedics LLC ("Biomet"), for alleged misappropriation of trade secrets. On January 29, 2009, Heraeus submitted an *ex parte* application for discovery in aid of foreign litigation pursuant to 28 U.S.C. § 1782. On February 2, 2009, this Court granted Heraeus' application. Thereafter, Heraeus served several broadly-worded subpoenas upon Biomet.

On March 2, 2009, Biomet filed a motion to vacate this Court's prior order. On March 17, 2009, Heraeus filed a response in opposition. On March 26, 2009, Biomet filed a reply. On April 8, 2009, this Court granted Biomet's motion and vacated its prior ruling, concluding that Heraeus' application for discovery was not appropriate under the Intel Corp discretionary factors. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). Specifically, this Court found: (1) that German discovery procedures provided ample opportunity for Heraeus to seek discovery; (2) that granting Heraeus access to United States' discovery procedures in order to avoid more restrictive German procedures was not in keeping with the purpose of the statute allowing international discovery; (3) that the discovery steps taken by Heraeus suggested that Heraeus was impermissibly seeking to circumvent the German procedures through its application for discovery in

this Court; and (4) that Heraeus' requests were vague, over-broad and impermissibly sought irrelevant and privileged information. See 3:09-mc-8 and 3:09-cv-183, Doc. No. 34.

On March 20, 2009, following the issuance of this Court's order, Heraeus filed a motion for review of the order. On July 9, 2009, Chief Judge Robert L. Miller denied Heraeus's objections. On July 22, 2009, Heraeus filed a notice of appeal in regards to this Court's ruling, arguing that the order contained errors of fact and law. See 3:09-cv-183, Doc. No. 47.

On July 21, 2009, under this, a different cause of action, Heraeus filed a second motion for discovery, similar to its prior application. On August, 26, 2009, this Court held a status conference to set a briefing schedule on the immediate motion and to discuss the relationship between the second application and the orders currently on appeal. On September 16, 2009, Biomet filed a response in opposition to Heraeus' second application for discovery. On September 28, 2009, Heraeus filed a reply.

**I.      Relevant Background**

Because the parties are not asserting new facts for the purpose of resolving this second application for discovery, the following facts are taken directly from this Court's prior order, in which this Court denied Heraeus' first application for discovery. As with the prior order, the facts are largely undisputed by the parties, for the purpose of this motion only.

The broader conflict between the parties has its roots in a 1998 joint venture between Biomet and Merck KGaA ("Merck"), a leading German pharmaceutical manufacturer. Prior to the joint venture, Heraeus had manufactured bone cements for Merck. While not formally agreeing to the joint venture, Heraeus continued to manufacture and supply bone-cement products for a year following the joint venture. In February 2005, however, Heraeus decided to cease supply of its products. In response, Biomet Switzerland GmbH ("Biomet Switzerland") sought an injunction to

compel Heraeus to continue providing bone cement to the joint venture. Later in 2005, Biomet Switzerland ultimately terminated its injunction proceedings. On September 18, 2008, however, Biomet Switzerland sued Heraeus a second time in regards to a similar contract dispute between Heraeus and the joint venture, this time involving the product Septopal. The Septopal case is currently pending in a German court.

Three months later, on December 30, 2008, Heraeus initiated a suit against Merck and Biomet, alleging misappropriation of trade secrets, in regards to its bone cement products. On January 29, 2009, before the German court had an opportunity to serve any party with a copy of Heraeus' complaint, let alone set discovery deadlines and parameters, Heraeus filed an *ex parte* application for assistance with discovery in this Court, under 28 U.S.C. § 1782 . On February 2, 2009, this Court granted Heraeus' *ex parte* application.

On March 2, 2009, however, Biomet filed a motion to vacate this Court's order, contending that Heraeus' application was improvidently granted. In particular, Biomet noted that this Court should have considered four discretionary factors, under Intel Corp, which are commonly utilized in assessing applications under the statute but were not disclosed in Heraeus' original application. Biomet argued that, under an analysis of these additional factors, Heraeus' application should have been readily denied. On March 17, 2009, Heraeus responded that this Court's prior order was sound, contending that the four additional factors are considered discretionary rather than mandatory and argued that, even under a more thorough analysis, Heraeus' application for discovery and resulting subpoenas were appropriate. This Court disagreed with Heraeus; and, on April 8, 2009, this Court granted Biomet's motion and vacated its prior ruling, concluding that Heraeus' application for discovery was not appropriate under the Intel Corp. discretionary factors.

3

Thereafter, following a review of this Court's order and the subsequent filing of an appeal to the 7th Circuit, which is currently pending, Heraeus' filed a second application for discovery, nearly identical to Heraeus' first application. Heraeus contends that the second application is entitled to a new review under the Intel Corp. factors for three primary reasons. First, Heraeus maintains that this Court should have resolved its analysis, under each Intel Corp. factor, in a manner which permitted open-access to U.S. courts to foreign litigants, thereby promoting the policy aims of the statute. Second, Heraeus argues that this Court impermissibly imposed an exhaustion requirement. In particular, Heraeus contends that this Court's prior order impermissibly required Heraeus to first seek discovery in Germany before seeking discovery through this Court. Third, Heraeus argues that it has significantly modified and truncated its first set of discovery requests in order to alleviate this Court's concerns of over-breadth and undue burden.

Biomet responds that this Court's prior ruling was properly considered under the Intel Corp. factors and argues, therefore, that a review of Heraeus' second application is unnecessary and redundant. In addition, Biomet argues that Heraeus has failed to sufficiently narrow its discovery requests to alleviate the burden imposed upon Biomet.

**II.     Analysis**

To begin, this Court notes that Heraeus' second application for discovery is disfavored. This Court has already conducted a full analysis of Heraeus' discovery requests under the four discretionary Intel Corp. factors and concluded that Heraeus' application for discovery was inappropriate. Thereafter, this Court's opinion was sustained upon review by Chief Judge Miller. Both opinions are currently on appeal before the 7th Circuit, the logical place for Heraeus' persistent objections to this Court's prior order, given the thorough review already provided by this Court. As such, at first blush, Heraeus' second application for discovery appears to be nothing more

4

than an attempt to get a second bite of the apple. Further, upon consideration of Heraeus' arguments in support of its second application, this conclusion appears correct, as the bulk of Heraeus' arguments are identical to Heraeus' arguments in support of its first application.

In this regard, Biomet asserts that a review of Heraeus' second application should be barred under either *res judicata* or *collateral estoppel* theories. Instead of perfunctorily blocking a legal review of Heraeus' second application, however, this Court has elected to consider Heraeus' second application in order to create a more complete record and to evaluate the assertion that Heraeus has significantly narrowed its discovery requests. However, this Court's conclusion remains unchanged.

      A.      <u>Heraeus' application for discovery is not appropriate under the *Intel Corp.* factors.</u>

The determination of whether discovery is appropriate under 28 U.S.C. § 1782(a) involves a two-part analysis. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). This analysis is discretionary and involves consideration of multiple factors. Id. ("As earlier emphasized, . . . a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

Initially, the statute requires that this Court determine whether: (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782(a) (1996). In two of this Court's prior orders, this Court applied these mandatory factors and concluded, both times, that Heraeus' application for discovery was appropriate. See 3:09-mc-8, Doc. No. 9 and Doc. No. 34. This Court does not disrupt that conclusion in this order.

Instead, this Court will focus its analysis where the parties focus theirs, that is, on the four discretionary factors articulated in Intel Corp. Under these factors, this Court must consider: (1) whether the respondents are parties in the foreign proceeding; (2) the nature of the foreign tribunal and its receptivity to U.S. discovery assistance; (3) whether the discovery application conceals an attempt to circumvent foreign discovery practices; and (4) the breadth and intrusiveness of the discovery requests themselves. Intel Corp., 542 U.S. at 264-65.

Preliminary Matters

To begin, in its second application, Heraeus asserts policy arguments, purportedly applicable to this Court's analysis under each of the four discretionary factors. As such, this Court will address this argument first. Throughout Heraeus's second application for discovery, Heraeus asserts that this Court's analysis under each of the Intel Corp. factors must yield to the policies underlying the statute and allow for liberal access to discovery. Specifically, Heraeus contends that allowing foreign litigants open access to United States courts is necessary to advance the "twin purposes of the statute" of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." See In re Application For An Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 79 (2nd Cir. 1997) (hereinafter "Metallgesellschaft"); Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2nd Cir. 1992). Indeed, Heraeus persistently contends that any exercise of discretion by this Court to bind Heraeus to the "more difficult," "less effective," and "less efficient" discovery procedures of the German courts, would violate the twin policy aims of the statute. See Heraeus' Response Brief, 3:09-mc-8, Doc. No. 32 at 7. See also Heraeus' Reply Brief, 3:09-mc-275, Doc. No. 29 at 9-10.

6

Despite these assertions, however, this Court does not agree that policy arguments, in favor of allowing liberal discovery under § 1782, trump or circumvent this Court's exercise of discretion under the Intel Corp. factors. Rather, this Court reads Intel Corp. as instructive upon lower courts to exercise a discretionary gate-keeping function when considering international discovery applications. While there are general policies under the statute that guide this Court to resolve conflicts, whenever possible, in a manner that encourages efficient discovery and international comity, this Court does not consider such policies to be so severe as to mandate unfettered access to United States courts in every instance. "While comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases, they do not permit our insertion of a generally applicable foreign discoverability rule into the text of § 1782(a)." Intel Corp., 542 U.S. at 261. Indeed, such a conclusion would effectively moot this Court's ability to exercise discretion under Intel Corp. and render this Court a mere "rubber stamp" for every international discovery application that crosses its threshold.[1]

Instead, this Court concludes that Intel Corp. imposes a duty on this Court to carefully consider the propriety of Heraeus' discovery application under four separate and important discretionary factors and specifically empowers this Court to deny the application if this Court concludes that the application falls afoul of the factors, even if that decision may have a potentially

---

[1] Indeed, this Court notes a pattern, in Heraeus' motions, of minimizing the importance of this Court's exercise of discretion under the Intel Corp. factors. In Heraeus' initial, *ex parte* application for discovery, Heraeus did not inform this Court of its duty to analyze Heraeus' application under the Intel Corp. factors, giving the false impression that only the three statutory factors were applicable to this Court's analysis of the application. See 3:09-mc-8, Doc. No. 1. Thereafter, in response to Biomet's motion to vacate this Court's order allowing Heraeus' *ex parte* discovery application, Heraeus asserted that this Court need not apply the Intel Corp. factors because the United States Supreme Court characterized the factors as discretionary rather than mandatory. See 3:09-mc-8, Doc. No. 32. This Court rejected this argument, however, noting that Heraeus failed to produce a single subsequent decision by a lower court that did not apply the Intel Corp. factors when analyzing a discovery application under § 1782. See 3:09-mc-8, Doc. No. 34. Finally, in support of this, Heraeus' second application for discovery, Heraeus argues that this Court's analysis under the Intel Corp. factors should be resolved in favor of allowing liberal access to discovery in order to promote the policy aims of the statute. See 3:09-mc-275, Doc. No. 1.

7

negative effect on efficiency and foreign reciprocity.[2]  As such, while this Court will make every effort to resolve its analysis in a manner consistent with the policy aims of the statute, this Court does not consider itself bound to allow unfettered access to discovery in this Court.  Rather, this Court intends to engage in a thorough analysis of Heraeus' second application under Intel Corp., with full authority to deny the application if this Court considers it appropriate to do so.

      1.      Identity of the Parties

The first discretionary factor under Intel Corp. is whether the party from whom discovery is sought is a participant in the foreign proceeding.  Intel Corp., 542 U.S. at 264.  If so, the need for this Court's assistance is diminished.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  Id.  In particular, when a foreign tribunal has jurisdiction over the party, it is presumed that the foreign court may itself order the production of evidence that is requested.  Id.  As such, Intel Corp. suggests that the need for assistance under the statute is greater where discovery is sought from a non-party to the foreign proceedings and the non-party is located in the United States.  Id.

In this Court's prior order, this Court noted that Biomet is a party to the German action, rather than a non-party; and, as a result, this Court was initially persuaded that the German court was the more appropriate tribunal for ordering discovery.  This Court sees no reason for disrupting its prior ruling in this regard, upon review of Heraeus' second application.

      2.      Nature of the Foreign Tribunal

---

[2]  See Intel Corp., 542 U.S. at 260-61 ("Nor does § 1782(a)'s legislative history suggest that Congress intended to impose a blanket foreign-discoverability rule on the provision of assistance under § 1782(a). The Senate Report observes in this regard that §1782(a) 'leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable").

The second factor requires that this Court consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel Corp., 542 U.S. at 264-65. Heraeus argues that, in the absence of authoritative proof that German courts would reject evidence obtained with the aid of § 1782, this factor weighs in favor of Heraeus. See In re Matter of Minatec Finance S.A.R.L. v. SI Group Inc., 2008 WL 3884374, **6-7 (N.D.N.Y. 2008) (hereinafter "Minatec").

Recognizing that this Court's prior order was silent as to this particular factor, this Court now states clearly its agreement with Heraeus' statement of the law regarding the factor. The Supreme Court has cautioned lower courts that "§ 1782 does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist [between the foreign tribunal and the United States]." Minatec, 2008 WL 3884374, at **6-7 (quoting Intel Corp., 543 U.S. at 263). Indeed, the Supreme Court has admonished that such comparisons are "fraught with danger." Id. As such, courts in other circuits have narrowed their consideration of evidence under this factor to authoritative proof of a foreign tribunal's position on the matters, such as when a "representative of a foreign sovereign has expressly and clearly made its position known." Id. See also Cryolife, Inc. v. Tenaxis Medical, Inc., 2009 WL 88348, *3 (N.D. Cal. 2009). Having received no such authoritative proof for or against the receptivity of German courts by either party, this Court concludes, similar to other courts faced with this situation, that the German court would not be opposed to assistance from this Court, should this Court decide to grant Heraeus' second application for discovery. Id.

   3.  <u>Circumvention of Foreign Discovery Practices</u>

The third factor requires this Court to consider whether the discovery application conceals an attempt to circumvent foreign discovery practices. Intel Corp., 542 U.S. at 264-65. In regards to Heraeus' previous application, the parties focused most of their arguments, and this Court spent the bulk of its prior decision, on the evaluation of this factor. Pursuant to this, Heraeus second application, this Court notes that the parties' arguments regarding this factor are nearly identical to the previous application. As such, this Court's analysis of the factor is, likewise, substantially similar to that of this Court's prior opinion.

Biomet begins by repeating the arguments it raised against Heraeus' first application. In particular, Biomet asserts that the German court has discovery procedures similar to those of this Court, affording Heraeus ample opportunity to assert its discovery requests in Germany. Specifically, Biomet notes that German courts allow parties to make specific document requests and apply negative inferences, at trial, against parties that fail to comply with such particularized requests.

In response, Heraeus also reasserts its arguments from its prior application, responding that, although German courts provide procedures for obtaining discovery, they are more restrictive than those of United States courts. In particular, Heraeus notes that, under German discovery procedures, Heraeus must specifically identify each of the documents sought, rather than simply asserting broad discovery requests in United States courts. In addition, although Heraeus acknowledges the application of negative inferences by German courts, Heraeus argues that such an inferences are only effective if Heraeus knows what facts are contained in each of the non-disclosed documents.

As in this Court's prior opinion, this Court is not persuaded by Heraeus' arguments regarding this factor. As presented in both applications for discovery, Heraeus expressly states a

desire to be free of the burdens and restrictions of the German court and recognizes a preference for the broader discovery rules of this Court. See 3:09-mc-8, Doc. No. 32 at 7. See also 3:09-mc-275, Doc. No. 29 at 9-10. As stated previously, this Court does not consider the intent of the statute to allow unfettered access to the United States' courts or to encourage foreign parties to "forum shop," whenever the procedures of their home tribunal are less favorable to their case.

In addition, further parroting the analysis from this Court's prior decision, this Court again concludes that the procedural steps, taken by Heraeus in each of these cases, bolster the inference that Heraeus' primary purpose in seeking discovery in this Court is to circumvent more restrictive discovery rules in Germany. First, Heraeus filed its application for discovery in this Court before Biomet and the other defendants in the German action had been served with a copy of the complaint or discovery deadlines could be set by the German court. Second, Heraeus initially failed to apprise this Court that a review under the Intel Corp. factors was appropriate to fully evaluate its first application, leading this Court to make a quick, but incomplete, analysis of Heraeus' initial application. Third, after this Court denied Heraeus' first application, rather than proceeding with its arguments on appeal, Heraeus simultaneously refiled its discovery application a second time, albeit with minor narrowing of the discovery requests.

These steps, along with Heraeus express assertions to be free of the "more difficult," "less effective," and "less efficient" discovery procedures of the German courts, strongly suggest to this Court that Heraeus improperly seeks a toothless and speedy approval of its discovery application in this Court, rather than having to abide by the more narrow rules of its chosen forum. This Court's reads the third Intel Corp. factor to prevent, precisely, this improper use of the statute. Although Heraeus may face potentially narrower and more time-consuming procedures for obtaining discovery in Germany, Heraeus is not prevented from obtaining discovery in Germany altogether.

11

As such, although Heraeus may have a preference for the discovery mechanisms of this Court, such a preference, in the absence of foreclosed discovery in Heraeus' home country, does not, by itself, mandate approval of Heraeus' application.

Heraeus challenges this Court's analysis in this regard as impermissibly imposing an exhaustion requirement under § 1782. Specifically, Heraeus notes that the statute does not require Heraeus to first seek discovery in the German court before seeking discovery in this Court. This Court acknowledges Heraeus' assertion to be an accurate statement of the law. See Minatec, 2008 WL 3884374, at *8. However, when evaluating Heraeus second application under the third Intel Corp. factor, this Court does not consider Heraeus' decision to first seek discovery in this Court rather than in Germany in isolation. Rather, this Court considers Heraeus' decision in conjunction with Heraeus' expressed assertions that it is seeking to avoid more restrictive German discovery procedures and in light of other decisions by Heraeus to accelerate discovery in this Court, occasionally at the expense of a thorough assessment of Heraeus' requests.

Heraeus is not required to first seek discovery in Germany. However, the discretionary factors of Intel Corp. are intended to assist this Court in determining whether Heraeus' is pursuing a proscribed and "blatant end-run around foreign proof-gathering restrictions or other policies of a foreign country." See In Re Microsoft Corp., 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006). See also In Re Babcock Borsig Ag, 583 F. Supp. 2d 233, 241-42 (D. Mass. 2008). One court state it this way, "[w]hile there is no 'exhaustion' requirement for seeking discovery under § 1782, the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in a foreign jurisdiction." Id. While not necessarily rising to the level of bad faith, Heraeus' statements and actions, taken together, lead this Court to conclude that Heraeus' application for discovery borders on an effort to improperly circumvent the more limited discovery rules of

Heraeus' chosen forum in Germany. As such, similar to the previous application, this factor weighs in favor of denying Heraeus' second application for discovery.

### 4. Scope of the Discovery Requests

Finally, the fourth factor directs this Court to examine the breadth of the discovery requests themselves. Intel Corp., 542 U.S. at 265. After reviewing the allegedly narrowed requests in Heraeus' second application, this Court is persuaded, once again, that this factor also weighs in favor of denying the application. The best way to explain this Court's analysis in this regard is to briefly review this Court's previous order and then separately evaluate Heraeus subsequent attempts to narrow its discovery requests.

In response to Heraeus' first application for discovery, Biomet argued that the language in Heraeus' subpoena requests was so broad that it could be easily interpreted to include "every single document referring or relating to the development and production of Biomet bone cement products," "every document concerning any business dealings whatsoever with Merck," "every regulatory filing in every world market," and "every internal Biomet communication for a 12-year period." This Court agreed, concluding that Heraeus' requests were vague, over-broad, and intruded upon privileged information. Influencing this Court's decision, in part, was Heraeus' puzzling assertion that it was not responsible for narrowly tailoring its discovery requests, arguing, instead, that Biomet had a duty to clarify the scope of the requests with Heraeus.

Pursuant to Heraeus' second application for discovery, Heraeus alleged that it had substantially narrowed its discovery requests in order to alleviate this Court's prior concerns of undue burden and over-breadth. However, upon reviewing the first set of amended requests, this Court is not persuaded that the requests are substantially less burdensome than Heraeus' original requests. Indeed, upon closer examination, this Court considers the alleged "narrowing" of the

requests to be little more than clever repackaging of Heraeus' original requests. Specifically, this Court notes that several of the discovery requests from the first application appear to have been merged in order to give the impression that Heraeus had eliminated particular requests altogether.[3] In addition, although several of the amended requests were actually narrowed to cover only two specific bone cement products rather than eleven or, worse, all of the bone cement products produced by Biomet, the new requests do little to narrow the scope of documents requested in relation to the two specified products.[4] In particular, by way of example, the new requests continue to seek "*all* documents and CE market approvals provided to the Joint Venture" and "*all* documents referring or relating to communications . . . relating to the CE market approvals . . .". As a result, this Court considers Heraeus' second set of document requests to be nearly identical to those of Heraeus' first application in both substance and burden imposed.

---

[3] For example, the first two requests in Heraeus' original subpoena separately requested documents associated with the Joint Venture Agreement and the Share Purchase Agreement and documents evidencing the relationship between Biomet and Merck from 1996 to the present. See 3:09-cv-183, Doc. No. 1-10 at 6. Although, the second subpoena appears, at first glance, to have stricken the second request altogether, a closer inspection of the modified request, reveals that Heraeus simply added language regarding Biomet and Merck's relationship to the first request. See 3:09-mc-275, Doc. No. 1-9 at 5. Similarly, document requests two and three in the second subpoena appear to be the result of a merging of requests three through six from the first subpoena. Heraeus' task here was even more simple as the fifth and sixth requests from the original subpoena were nearly identical to the third and fourth requests, except for a more focused search for evidence of market approvals. See 3:09-cv-183, Doc. No. 1-10 at 6. As such, in the second subpoena, Heraeus appears to have merely added language regarding market approvals to the third and fourth original requests, thereby merging the four requests and giving the appearance of proscribed discovery. See 3:09-mc-275, Doc. No. 1-9 at 5.

[4] For example, document requests four and five in the second subpoena limit the scope of the original requests from eleven products to two, Refobacin © Bone Cement R and Biomet Bone Cement R. However, while the new requests affect fewer products, they still request the same broad swath of documents for each product as the original requests. Indeed, these amended document requests still seek "all documents referring or relating to communications . . . from 2004 to the present" between Biomet and various companies in the production of the aforementioned products. In particular, these requests continue to seek all documentation regarding the chemical make up of the products, the raw materials, the procedures used to test and develop the, and the manufacturing instructions for the final products. Such requests, although limited to only two products, logically incorporate every document affecting the development of these products from the time of initial product design to commercial marketing and manufacturing of the finished product.

14

However, this Court's analysis does not stop there. Following this Court's status conference on August 26, 2009, upon leave of this Court, Heraeus further truncated its requests in a third attempt to narrow the scope of its requests and to sway this Court's discretion under the fourth Intel Corp. factor. See 3:09-mc-275, Doc. No. 28-8. Nevertheless, despite the additional changes, this Court similarly considers Heraeus' third set of document requests to be over-broad.

The first four requests of the third subpoena are more precise versions of the first two requests from the original subpoena. These amended requests, though more in number, are more specified as to the particular documents requested and are more narrowly drafted to cover only the communications between Biomet and Merck in relation to those documents. This Court considers these requests to be carefully drafted and not unduly burdensome on their face.

The next two requests of the third subpoena, numbers five and six, seek "all documents" between Biomet and TUV Product Services GmbH, a German registration entity, in regards to market approvals and change notifications for two specific bone cement products made by Biomet. The following four requests of the third subpoena, numbers seven through ten, seek "all documents" relating to communications between Biomet and three other corporations, in regards to: the specifications and raw materials of the same two products, the test methods and test instructions for the products, the manufacturing instructions, and any manufacturing agreements related to the products. These requests, though more particularized in language than the previous sets of requests and limited to only two products and four companies, logically incorporate every document affecting the development of these products from the time of initial product design to commercial marketing and manufacturing of the finished products. Such requests are not only crushingly burdensome to Biomet but necessarily tread on confidential product information.

15

To this end, Biomet asserts that, although this Court has issued a protective order in this case, this Court's order has no effect to protect the disclosed information in the German court, potentially exposing Biomet's valuable trade secrets at later stages in the litigation. In response, Heraeus asserts that it would be willing to receive the requested information on an "outside counsel's eyes only basis," reviewing the documents under the terms of this Court's protective order and then seeking further leave of Court to use the documents that it deems relevant to the German litigation. However, because Heraeus has failed to explain precisely how it intends to protect the confidentiality of Biomet's trade secrets in the German proceedings, under German law, Heraeus has failed to justify that such invasive and burdensome discovery should be had in the first place. Without such assurance that the information can and would be protected, going forward, this Court is persuaded that the burden in this regard outweighs the benefit to Heraeus.

This Court considers the eleventh request of the third subpoena to be nearly identical, if not more expansive, than a similar request made in the second application. This request seeks "all documents" relating to communications between Biomet and four separate companies in regards to the development or supply of bone cement copolymers "from 2004 until today, including, without limitation, specifications including the tolerances of the specifications of these Specific Ratio MA/MMA Copolymers." Besides identifying the types of copolymers requested, Heraeus has done nothing the limit the scope of documents requested in relation to these products or the time frame of the requests from its second request. As such, this Court considers them to be substantially unchanged and similarly over-broad as the previous applications.

Similarly, the last two requests of the third application, numbers twelve and thirteen, are also nearly identical to requests made in the first and second applications for discovery. Any minor changes to these requests, in the three attempts by Heraeus, do very little to limit the scope of the

16

requests. Instead, Heraeus continues to seek "all documents referring or relating to communications," "between any member(s) of the Biomet Group" from 1996 to 2005 regarding: the Share Purchase Agreement; the valuation of assets transferred/contributed by Merck to the Joint Venture; the valuation of the purchase price attributable to bone cement products; and any similar communications from 2005 to the present regarding the decision to develop two of Biomet's bone cement products and communications affecting market approvals for those products. Facially, these requests are similarly crushing in scope. The time frame of these requests covers every communication in the past thirteen years. Further, the request seeks every communication between the Biomet Group, which Heraeus defines to include,

> any of the one of the number of the Biomet "predecessors, successors in interest, assignees, subsidiaries, corporate parents, divisions, affiliates, and any entity having common ownership or control, and all directors, officers, employees, agents, and/or representatives of the aforementioned entities, including without limitation, Biomet Orthopedics LLC and Biomet Europe B.V., including its European subsidiaries, without limitation, Biomet Deutschland GmbH and Biomet Orthopedics Switzerland GmbH.

See 3:09-mc-275, Doc. No. 28-8 at 5. In addition, the requests are so broad that the cover every single document affecting the valuation of assets pursuant to both the Joint Venture and the Share Purchase Agreement and Biomet's decision to create and market the two bone cement products. This Court found these requests to be severely over-broad in Heraeus' previous two attempts and does so again here.

Even under the "more permissive" discovery procedures of this Court, Heraeus is not permitted to use this Court's discovery procedures to undertake a fishing expedition. Instead, this Court has authority under Fed. R. Civ. P. 26(b) to block any discovery request that this Court considers irrelevant or unduly burdensome. Because this Court concludes that Heraeus' requests impermissibly delve into both categories, this Court concludes, again, that it is

17

appropriate to proscribe Heraeus' discovery requests in this instance.  See also In re Apotex Inc., 2009 WL 618243 at *3-4 (S.D.N.Y. 2009) (vacating § 1782 application due to the over-breadth of discovery requests).

Finally, Heraeus contends that it is an abuse of discretion for this Court to deny rather than modify any discovery request that this Court considers over-broad.  In support, Heraeus cites to an outdated Second Circuit case which held that, "it is far preferable for a district court to reconcile whatever misgivings it may have . . . by issuing a closely tailored discovery order rather than by simply denying relief outright.".  Metallgesellschaft, 121 F.3d 77, 79 (2nd Cir. 1997).  However, this Court notes that Heraeus' reliance on Metallgesellschaft is misplaced, as the Supreme Court clarified, seven years after Metallgesellschaft, that it is within the sound discretion of the Court to deny discovery requests that the Court considers over-broad.  Specifically, Intel Corp. held that "unduly burdensome requests may be *rejected* or trimmed." Intel Corp., 542 U.S. at 265 (emphasis added).  Heraeus has had three attempts to properly narrow its requests, each of which have been determined by this Court to be unduly burdensome.  As such, and in light of the other factors weighing against Heraeus' application, this Court declines any attempt to *sua sponte* narrow Heraeus' requests at this juncture.

## III.    Conclusion

Exercising its discretion under the Intel Corp. factors, this Court now **DENIES** Heraeus' second application for discovery under 28 U.S.C. § 1782, [Doc. No. 1], and **QUASHES** the resulting subpoenas served on Biomet.

**SO ORDERED**.

Dated this 29th Day of October, 2009.

                                                        S/Christopher A. Nuechterlein
                                                        Christopher A. Nuechterlein
                                                        United States Magistrate Judge