UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In Re: Application of ) | |
| HERAEUS KULZER GmbH for an ) | |
| Order Pursuant to 28 U.S.C. § 1782 ) | |
| to Take Discovery Pursuant to the ) | CAUSE NO. 3:09-CV-530 RM |
| Federal Rules of Civil Procedure ) | |
| for Use in Foreign Proceedings ) | |

OPINION and ORDER

This cause is before the court on the application of Heraeus Kulzer GmbH, made pursuant to 28 U.S.C. § 1782, for discovery from Biomet, Inc. and Biomet Orthopedics, LLC for use in Heraeus' lawsuit currently pending against the Biomet entities in Germany. The parties' familiarity with the factual and procedural backgrounds of this case is assumed and won't be repeated here unless necessary. *See* Heraeus Kulzer, GmbH v. Biomet, Inc., Nos. 09-CV-183, 09-CV-530, 2011 WL 198117 (7th Cir. Jan. 24, 2011). Based on the appellate decision, the court needn't address the requirements of 28 U.S.C. § 1782 or the discretionary factors of Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004), but will "consider Heraeus's requests as it would any other discovery requests in a complex case." Heraeus Kulzer v. Biomet, 2011 WL 198117, at *7.

The discovery process in this action is governed by Federal Rule of Civil Procedure 26, which permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "For good cause shown, the court may order discovery of any matter

relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). "For discovery purposes, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard." Yessenow v. Hudson, 270 F.R.D. 422, 426 (N.D. Ind. 2010) (internal quotation and citation omitted). If a party from whom discovery is requested objects to its production, that party bears the burden of showing with specificity why a particular discovery request is improper. Yessenow v. Hudson, 270 F.R.D. 422, 427 (N.D. Ind. 2010); Burkybile v. Mitsubishi Motors Corp., No. 04-C-4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006).

Pursuant to counsels' agreement at the February 14, 2011 status conference, the parties have engaged in negotiations relating to the documents requested: Heraeus has further narrowed its requests, and Biomet has agreed to produce certain of those categories of documents. Although counsel for Biomet represented at the conference that Biomet would begin producing documents to which it had no objection by February 25 or as soon thereafter as reasonably possible, Heraeus says in its reply brief that as of March 10, no documents have been produced.

A review of Heraeus' final, narrowed requests convinces the court that, with an exception to be noted, the documents sought are relevant to the company's

allegations of misappropriation of trade secrets. As the court of appeals noted, "Heraeus was concerned that confidential information it supplied to Merck would flow to Biomet and reveal trade secrets that would enable Biomet to compete more effectively against Heraeus in the bone-cement market. And sure enough, in 2005 Biomet began making a bone cement that was a close substitute for Heraeus's product; Heraeus contends that Biomet's product incorporates Heraeus's trade secrets without authorization." Heraeus Kulzer v. Biomet, 2011 WL 198117, at *3. The court can't agree with Biomet that Heraeus' request for information related to Biomet's decision to develop a line of bone cement products and the timing of the development of those products amounts to a "fishing expedition" or that Heraeus' "theory regarding the potential relevance of these documents is entirely speculative." Resp., at 8-9. Heraeus' requests appear to be related and/or relevant to its claim of trade secret misappropriation.

Biomet also says it should only be required to produce relevant documents from the calendar year 2005 because the misappropriation is alleged to have occurred in 2005. Biomet says it has agreed "to search for materials from the entire 2005 calendar year, which covers several months outside the relevant February to August timeframe." Resp., at 14. The court can't agree with Biomet that the only relevant time period is 2005, but also can't agree with Heraeus that production of documents from 2004 through today is reasonable. Even though Biomet's change in personnel might create more work for Biomet in rounding up documents responsive to the requests, the court concludes that Biomet's

3

production of documents from the time period 2004-2008 would provide Heraeus with the information Heraeus seeks while not being unduly burdensome to Biomet.

Rule 26(b)(1) allows for discovery of "any matter relevant to the subject matter involved in the action" and further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See also* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Recognizing that the Federal Rules of Civil Procedure and Federal Rules of Evidence don't apply to the German proceedings and this court's only connection to the German proceedings is supervision of discovery ancillary to that action, the court should "be especially hesitant to pass judgment on what constitutes relevant evidence." Elm Energy & Recycling (U.K.) Ltd. v. Basic, No. 96-C-1220, 1996 WL 596456, at *11 (N.D. Ill. Oct. 9, 1996). Thus, the court must be permissive in determining the relevancy of the discovery requests. In re IKB Deutsche Industriebank AG, No. 09-cv-7852, 2010 WL 1526070, at *5 (N.D. Ill. Apr. 8, 2010).

Therefore, the court GRANTS Heraeus' motion to compel [docket # 61] and DIRECTS Biomet to produce documents from the years 2004-2008 unless not applicable or unless otherwise indicated:

4

Requests 1 and 2 –

  A complete and unredacted copy of the Joint Venture Agreement(s) and the Share Purchase Agreement(s), the exhibits, if any, to each agreement, any amendment to either agreement, and any side letters to either agreement.

Requests 3, 4, and 12(b) –

  Correspondence between Biomet and Merck [#3 and #4] and between any member(s) of the Biomet Group [#12(b)] relating to the Joint Venture Agreement and Share Purchase Agreement for the period of time between the parties' initial contact about the subject matter of those two agreements and the signing of the agreements.

  Topics have been limited to:
   – communications referencing or pertaining to Palacos or any other Heraeus bone cement products at issue in the German proceeding, including without limitation the market registration, distribution, manufacture, and/or sale of such products;
   – communications referencing or pertaining to Biomet's decision to develop and manufacture Biomet's bone cements Refobacin Bone Cement R and Biomet Bone Cement R and Biomet's implementation of that decision and which also reflect or pertain to the Heraeus Confidential Information (defined as including (1) specifications for the raw materials in the composition, including optimal characteristics of each raw material; (2) test protocols to insure compliance with specifications during the manufacture and relating to the overall quality of the final product; and (3) specifications and manufacturing protocols that indicate how to combine copolymers and any other raw materials or intermediate products into final bone cement products).
   – communications referencing or pertaining to the valuation of assets (including market authorizations) or goodwill relating to bone cements products at issue in the German proceeding.

Requests 5 and 6 –

Documents filed with TUV Product Services GmbH, Munich, Germany, to obtain CR market approvals for Heraeus' bone cements Refobacin Palacos R and Palacos R and all CE Market approvals issued for those two bone cements and provided to the Joint Venture by Merck [#5].

Documents filed with TUV Product Services GmbH, Munich, Germany, to submit change notifications relating to prior market approvals issued to the two bone cements referenced in Request 5 [#6].

Requests 7, 8, 9, and 10 –

Documents and communications from the Biomet group to aap Implantate AG, aap Biomaterials GmbH & Co. KG (formerly Mebio/Coripharm), and/or EMCM b.v. relating to Biomet's bone cements Refobacin Bone Cement R and Biomet Bone Cement R and the following topics:
– specifications, including tolerances, for raw materials for semi-finished (both powder and liquid components) and final products for the above bone cements [#7];
– test methods and instructions provided by Biomet for determining whether the above bone cements meet the specifications established for the raw materials for semi-finished and final products [#8];
– manufacturing instructions (for combining components into final bone cement products) provided by Biomet for the above bone cements [#9];
– any manufacturing agreements (plus exhibits and attachments) for the above bone cements [#10].

Request 11 –

Communication documents by and between Biomet and Esschem, Inc., aap Implantate AG, aap Biomaterials GmbH & Co. (formerly Mevio/Coripharm), and/or Mebio/Coripharm, EMCM b.v. relating to development and/or supply of Specific Ratio MA/MMA Copolymers used by or supplied (directly or indirectly) to Biomet for bone cements, including, without limitation, specifications including the tolerances of the specifications of the Specific Ratio MA/MMA Copolymers.

"Supply" documents are limited to:

       – documents sufficient to show the total amount (in weight, not by price) of Specific Ratio MA/MMA Copolymers shipped to Europe annually for use in the Biomet bone cements at issue in the German proceeding; and

       – all supply agreements between any Biomet entity and Esschem, Inc., aap Implantate AG, aap Biomaterials GmbH & Co., and Mebio/Coripharm, EMCM b.v. involving the Specific Ratio MA/MMA Copolymers used by or supplied (directly or indirectly) to Biomet for the Biomet bone cements at issue in the German proceedings.

Request 12(a) –

       Communication documents from 1996-1997 with or between any member(s) of the Biomet Group relating to the valuation of assets contributed by Merck to the Joint Venture related to the bone cement products at issue in the German proceeding at the time of the creation of the Joint Venture.

Request 12(c) –

       Communication documents from 2003-2004 with or between any member(s) of the Biomet Group relating to the valuation of that portion of the purchase price of $300 million paid by Biomet for Merck's share in the Joint Venture that is attributable to bone cement products at issue in the German proceedings (excluding the valuation of any assets that are not related to bone cement products).

Request 13(a) –

       Communication documents with or between any member(s) of the Biomet Group relating to the decision to develop and manufacture Biomet's bone cements Refobacin Bone Cement R and Biomet Bone Cement R and Biomet's implementation of that decision and which also reflect or pertain to the Heraeus Confidential Information (defined as including (1) specifications for the raw materials in the composition, including optimal characteristics of each raw material; (2) test protocols to insure compliance with specifications during the manufacture and relating to the overall quality of the final product; and (3) specifications and manufacturing

protocols that indicate how to combine copolymers and any other raw materials or intermediate products into final bone cement products).

Request 13 (b) –

Communication documents with or between any member(s) of the Biomet Group relating to CE market approvals filed with TUV Product Services GmbH, Munich, Germany, for Biomet's bone cements Refobacin Bone Cement R and Biomet Bone Cement R.

Counsel indicated at the February 14 conference that they would be conferring about possible modifications to the protective order entered on February 11, 2009 in Cause No. 3:09-CV-183, but no changes have been proposed or submitted, so the 2009 protective order will govern these proceedings.[1] The court lastly notes that Heraeus has offered its assistance to Biomet in reviewing Biomet documents for relevance and/or copying. While the court won't at this time become involved in directing Biomet's search for and production of relevant documents, it strongly encourages the parties to take whatever steps might be necessary to immediately implement the document production. Because gathering counsel for a conference at this time might only impede the production of documents, the court DENIES Heraeus' request for a status conference [docket # 64].

SO ORDERED.

ENTERED:     March 16, 2011

---

[1] The February 11, 2009 protective order's terms are the same as those proposed by Heraeus in this case and filed as an exhibit to its Second Application for Discovery on July 21, 2009.

   /s/ Robert L. Miller, Jr.  
Judge, United States District Court