UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

In Re: Application of )
HERAEUS KULZER GmbH for an )
Order Pursuant to 28 U.S.C. § 1782 )
to Take Discovery Pursuant to the ) CAUSE NO. 3:09-CV-530 RM
Federal Rules of Civil Procedure )
for Use in Foreign Proceedings )

OPINION and ORDER

This cause is before the court on the motion of Heraeus Kulzer GmbH for further modification of the court's protective orders to remove nine specific documents ["cited documents"] from the restrictions of the protective orders. Biomet, Inc. and Biomet Orthopedics, LLC [collectively "Biomet"] and Esschem, Inc. filed objections to Heraeus's motion, and the court heard argument from the parties on September 2, 2015. Based on its consideration of the parties' oral arguments and written submissions, the court denies Heraeus's motion.

BACKGROUND

Heraeus initiated this action in January 2009 to obtain discovery in aid of its trade secrets misappropriation litigation in Germany. Heraeus reports that on June 5, 2014, a judgment was entered in its favor in Germany: the Frankfurt Court of Appeals held that Biomet and certain of Biomet's affiliates had misappropriated Heraeus's trade secrets by using those trade secrets to guide

Esschem in creating the copolymers used by Biomet in its bone cement products. The Frankfurt Court enjoined Biomet from manufacturing, offering, or distributing, or having manufactured, offered, and/or distributed any bone cement products developed using the misappropriated Heraeus trade secrets, including certain copolymers developed by Esschem. In addition, Biomet was held liable for damages for the harm suffered by Heraeus. Biomet has filed an appeal with the Supreme Court of Germany and has initiated proceedings in Germany to clarify the reach of that judgment.

Heraeus says that based on the entry of the German judgment, it has filed actions in the Netherlands and in France to enforce its rights to its trade secrets because, Heraeus claims, Biomet and Esschem "are funneling [their] illegal products into Europe and elsewhere in an apparent attempt to circumvent the Frankfurt Court's injunction." Mot., at 3. Heraeus indicates that it might need to file further actions in other courts and possibly submit the cited documents in those cases. Heraeus maintains amendment of the protective orders in this case is necessary to permit it to use the cited documents without unnecessary restrictions. According to Heraeus, the Frankfurt Court determined that the trade secrets and confidential information described in the cited documents belongs to Heraeus, and because the German judgment quotes extensively from the cited documents, use of the actual documents might be necessary in pursuing its enforcement actions. Heraeus reports that it has tried unsuccessfully to reach an

agreement with Biomet and Esschem to amend the protective orders to permit Heraeus's use of the cited documents.

The parties' written submissions include a general outline of the protective orders previously entered in this case, and the history of those amendments needn't be repeated here. *See also* Seventh Amd. Protective Ord., at 1-7.

APPLICABLE LEGAL STANDARD

The parties disagree about the legal standard governing a request to modify a protective order. Heraeus maintains the burden is on Biomet and Esschem to show good cause for maintaining the restrictions of the current protective orders, while Biomet and Esschem contend Heraeus has the burden of demonstrating that modification of the protective orders is warranted. The parties have cited case law supporting both positions.

Heraeus claims that once a document has been relied on by a court or incorporated into a court ruling, that document isn't entitled to continued protection unless the party asking that the document remain sealed establishes that the document contains trade secrets. Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, 545 (7th Cir. 2002). Heraeus says documents designated as confidential under a protective order are always subject to challenge, Baxter Int'l, Inc. v. Abbott Labs, 297 F.3d 544, 546 (7th Cir. 2002), and a protective order should be

modified when, like here, doing so serves the interests of justice and expediency. Jepson, Inc. v. Black & Decker, 30 F.3d 854, 860-861 (7th Cir. 1994).

Heraeus is correct that a protective order is always subject to challenge, but the court can't agree that Heraeus's filing of a motion to modify the protective orders puts the burden on the opposing party to demonstrate that the protective orders should be maintained. Even recognizing that case law and policy concerns in the United States counsel against keeping court documents and files under seal,[1] and against continuing to keep documents that led to a judgment under seal,[2] that law and those policy concerns govern proceedings in this country's courts – those same considerations might well be inapplicable elsewhere, especially in light of the secrecy of court files in Germany and other countries.

In addition, Biomet and Esschem contest Heraeus's claim that the trade secrets and confidential information in the nine documents at issue belong to

---

[1] *See* GEA Group AG v. Flex-N-Gate Corp., 740 F.3d 411, 419 (7th Cir. 2014) ("Secrecy in judicial proceedings is disfavored, as it makes it difficult for the public (including the bar) to understand why a case was brought (and fought) and what exactly was at stake in it and was the outcome proper."); In re Dennis Bamber, Inc., No. 06-31800, 2007 WL 781378, at *1 (Bkrtcy. N.D. Ind. Feb. 14, 2007) ("[W]hether it arises out of concerns animated by the First Amendment, or because courts may deal with matters of public interest, or due to the public's right to monitor the performance of their public institutions, or a combination of all three of these concerns, there is a presumption – some say a strong presumption – that documents placed in the court's files are open and available to the public.").

[2] *See* City of Greenville, Ill. v. Syngenta Crop Protection, LLC, 764 F.3d 695, 697 (7th Cir. 2014) ("Once filed with the court, . . . documents that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality. This transparency enables interested members of the public . . . to know who's using the courts, to understand judicial decisions, and to monitor the judiciary's performance of its duties.") (internal quotations and citations omitted); Baxter Int'l, Inc. v. Abbott Labs., 297 F.3d 544, (7th Cir. 2002) ("[D]ocuments . . . that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality."),

Heraeus. They note that Biomet's appeal of the German judgment still pends and say that even if the German judgment stands, the documents at issue contain confidential information that belongs to Biomet and Esschem and falls within the scope of the protective orders.

Biomet and Esschem cite to Romary Assocs., Inc. v. Kibbi, LLC, No. 1:10-CV-376, 2012 WL 32969 (N.D. Ind. Jan. 6, 2012), in support of their argument that Heraeus bears the burden of establishing good cause for modification of the protective order:

> Just as good cause is required to enter a protective order, good cause is also required to modify a protective order. The party seeking to modify the protective order has the burden of demonstrating that good cause exists. This burden is especially high where a protective order is agreed to by the parties before its presentation to the court. When deciding whether to modify a protective order, courts consider the nature of the protective order, foreseeability at the time of issuance of the modification requested, parties' reliance on the order, and whether good cause exists for the modification.

Romary Assocs. v. Kibbi, LLC, 2012 WL 32969, at *1 (internal quotations and citations omitted); *accord* Chicago Mercantile Exchange, Inc. v. Technology Research Group, LLC, 276 F.R.D. 237, 239-240 (N.D. Ill. 2011) ("In considering modifications of a protective order, judges in this district have adopted a test that considers four factors: (1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the

5

modification."); Braun Corp. v. Vantage Mobility Int'l, LLC, 265 F.R.D. 330, 332 (N.D. Ind. 2009) (same).

Because the true ownership of the trade secrets and confidential information in the cited documents isn't yet clear, Heraeus, as the party seeking the modification, should shoulder the burden of demonstrating good cause for modifying the protective orders. Braun Corp. v. Vantage Mobility Int'l, LLC, 265 F.R.D. 330, 332 (N.D. Ind. 2009); Murata Mfg. Co. v. Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006). To determine whether the protective orders in this case should be modified, then, the court considers the four factors from Romary Assocs. and Chicago Mercantile Exchange.

*Nature of the Protective Order*

"In determining whether to vacate a protective order, courts consider the nature of the order – that is, its scope and whether it was court imposed or stipulated to by the parties. . . . [A] 'blanket' protective order [] permits the parties to protect selected documents that they believe in good faith contain trade secrets and other confidential commercial information. Such orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors. They are more difficult to modify or vacate when the parties have stipulated to them." Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006) (internal quotations and citations omitted);

*see also* Braun Corp. v. Vantage Mobility Intern., LLC, 265 F.R.D. 330, 332 (N.D. Ind. 2009) (same).

The original protective order entered in this case has been modified a number of times over a period of four years, each time pursuant to the parties' agreement. According to Biomet, the parties "mutually acknowledged the sensitive nature of the [documents] and carefully negotiated restrictions on their use," Biomet Resp., at 11, and those protections have guided Heraeus's use of the documents at issue in the German courts. Biomet and Esschem maintain Heraeus's request for modification of the protective orders is based on the false premise that the cited documents contain only Heraeus's trade secrets, when, in fact, the documents contain additional confidential information not referenced by the German court. Biomet and Esschem say that without the protections agreed to by the parties, they have no assurance that the confidentiality of their information will be preserved. Heraeus, on the other hand, says it never agreed that the cited documents were entitled to protection indefinitely, and Biomet and Esschem haven't shown good cause for extending the current restrictions on Heraeus's use of the cited documents.

Regardless of whether the German judgment is affirmed, reversed, or found to be enforceable or unenforceable by courts in other countries, the proceedings in this court shouldn't limit Heraeus's ability to avail itself of whatever the German judgment gives it. Based on representations by Biomet and Esschem that

7

although they couldn't agree to a complete lifting of the protective orders, they would be agreeable to less drastic alternatives for use of the nine documents, this factor favors at least a partial modification of the protective orders.

*Foreseeability*

"The 'foreseeability' factor . . . has been defined as asking whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order. Not surprisingly, a party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 180 (N.D. Ill. 2006) (internal quotations and citations omitted).

Biomet and Esschem say this factor weighs in their favor: when Heraeus filed this action and agreed to the terms of the protective orders, Heraeus knew Biomet was selling bone-cement products outside Germany, so Heraeus should have anticipated the need to file enforcement actions in other jurisdictions. Heraeus disagrees and says its pursuit of enforcement actions has been necessitated by Biomet's refusal to comply with the German court's injunction, action by Biomet that was unforeseeable to Heraeus. According to Heraeus, "Biomet and Esschem have stubbornly refused to stop making and using the

8

stolen copolymers, Biomet has shifted its operations to try to avoid the reach of the German courts, and Heraeus has been forced to take further legal action to protect its rights." Reply, at 11. Heraeus says Biomet and Esschem can't use their own wrongdoing as a justification to impede Heraeus's enforcement efforts.

Whether Heraeus's filing of enforcement actions was foreseeable isn't clear from this record. Biomet says it was selling its bone-cement products outside Germany before Heraeus's suit in Germany; Heraeus claims Biomet "shifted" is operations to avoid the reach of the German court. The court is unable to determine the import of this factor and so must conclude that the issue of foreseeability is a neutral factor.

*Parties' Reliance on the Protective Order*

"Reliance in this context is defined as 'the extent to which a party resisting modification relied on the protective order in affording access to discovered materials.'" <u>Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.</u>, 234 F.R.D. 175, 180 (N.D. Ill. 2006) (internal quotations and citations omitted).

The parties have been cooperating in the discovery process for the past four years under the terms of the various amendments to the protective orders. Biomet reports that it produced its documents in reliance on protections that have been "a workable and effective means of balancing the parties' competing interests. . . . [T]he restrictions to which Heraeus agreed were the price of gaining access to

9

Biomet's commercially sensitive information. Heraeus advocated for the protective orders as a means of assuring Biomet – and the court – that discovery would not result in disclosure of such information." Biomet Resp., at 13. At oral argument, Biomet's counsel challenged Heraeus's claim that the contents of the cited documents belong to Heraeus. Biomet maintains the cited documents contain Biomet's confidential business information – including its research and product testing results, discussions with vendors about its bone cement products, and thoughts on how to improve its products – information that is entitled to protection under the terms of the orders.

Esschem also takes issue with Heraeus's claim that the cited documents contain only Heraeus's trade secrets. Esschem says the cited documents "contain confidential information relating to Esschem's equipment and processes for making copolymers that has nothing to do with the alleged trade secrets at issue in the German judgment." Esschem Resp., at 9-10. Esschem asserts that Heraeus has no reason to want to protect Esschem's confidential information, and "absent the safeguards set forth in the protective orders, Esschem has no assurance that the confidentiality of information regarding Esschem . . . will be preserved." Esschem Resp., at 10.

Heraeus contends Biomet and Esschem have failed to acknowledge that protective orders protect information at the discovery stage, and evidence that influences a judicial decision may be treated differently. According to Heraeus,

even though Biomet might have relied on the protective orders when producing documents, that reliance is an insufficient basis to deny Heraeus's request to modify those orders.

The parties negotiated and agreed to the protective orders in this case, so "a modification at this juncture should be viewed with a critical eye." Chicago Mercantile Exchange, Inc. v. Technology Research Group, LLC, 276 F.R.D. 237, 240 (N.D. Ill. 2011). That discovery proceeded and Heraeus was able to obtain a judgment in the German proceedings while the parties operated under the terms of the protective orders for the past four years weighs against modification. *See* Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 180 (N.D. Ill. 2006) ("[I]t is worth noting that the protective order has been in effect for nearly two years. Certainly it can be said that Bel Fuse has come to rely on it; it is part of the landscape of this case.").

*Good Cause*

"'Good cause' in this context implies changed conditions or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a protective order. In considering whether the party seeking to vacate the protective order has established good cause, the court must weigh that party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides'

11

goals." Murata Mfg. Co., Ltd. v. Bel Fuse, Inc., 234 F.R.D. 175, 180 (N.D. Ill. 2006) (internal quotations and citations omitted).

Biomet and Esschem say Heraeus hasn't shown any changed circumstances or new situations necessitating modification of the protective orders. "All that Heraeus can muster is the assertion that, in connection with actions it has *already* filed in the Netherlands and France, and in anticipation that Heraeus *may* need to file still further actions, Heraeus understands that it *may* need to submit the [cited documents] in those cases." Biomet Resp., at 14 (emphasis in original). Biomet and Esschem note that Heraeus has already initiated actions in the Netherlands, France, and the United Kingdom, all without needing to submit the cited documents, and Heraeus has cited no instance where the current protective orders have impeded its pursuit of any foreign action. Biomet asserts that without any particularized showing of necessity, Heraeus shouldn't be allowed to "leapfrog the process on the basis of hypothetical impediments that have yet to present themselves." Biomet Resp., at 15-16.

Heraeus insists that for its enforcement actions to be effective, it must be able to respond quickly, without weeks of negotiations and advance notice to Biomet and Esschem. In addition, Heraeus maintains it shouldn't be required to "lay out its specific trial strategies for its opponents and spend weeks negotiating before the documents can be used. . . . Indeed, Biomet's and Esschem's insistence on maintaining these restrictions is just one more instance in a continuing patter

of obfuscation and delay that has plagued this dispute since its inception." Reply, at 12. Heraeus asserts that if Biomet "moves its operations to another European country, Heraeus must be able to submit the cited documents to customs officials and other tribunals to enforce the [Frankfurt] judgment and otherwise protect its rights. . . . [and] any delay in submitting the cited documents to the appropriate courts, tribunals, or agencies could severely prejudice Heraeus." Mot., at 6.

While Heraeus stresses the importance of removing the cited documents from the current restrictions of the protective orders, the company hasn't made a particularized showing of a compelling need to do so. Heraeus says it has initiated enforcement actions without needing to submit any of the cited documents, but contends submission of those documents "may" become necessary and it "won't have time to haggle" with Biomet and Esschem about its future use of the documents. Heraeus's claims in this regard are too tenuous to establish good cause.

On balance, Heraeus hasn't shown good cause to remove the nine named documents from the protective order. Heraeus has shown, though, that for the protective order to govern proceedings beyond Germany, Heraeus must be able to move more quickly than was necessary during the German litigation for which the protective order was designed. At least some of the time periods in the Seventh Amended Protective Order — perhaps, for example, those in paragraphs 3(i), 3(l),

13

4(c), 10, and 11 — should be revisited so that Heraeus can make whatever use of the German judgment another nation's courts might allow.

ADDITIONAL TRANSLATOR

Heraeus has asked that it be permitted to hire a translator of its choice to translate confidential materials. Heraeus claims the current translator "has proven to be slow, unresponsive, and caused significant problems when commissioned to translate the court file for the Pennsylvania action." Reply, at 14-15. That translator also took several weeks to translate the German judgment into French. Mot., Exh. 2 (Klinkert Dec.), at ¶ 22.

Esschem doesn't object to the hiring of another translator, provided that Heraeus obtains its approval of the additional translator and that the translator be required to sign a confidentiality statement. Biomet objects and claims that "there are less drastic alternatives than complete elimination of the translator restrictions." Biomet Resp., at 18 n.7. Biomet hasn't set forth any of the alternatives to which it refers.

Based on the fact that the cumbersomeness of the translation process might be overstated now that the need to translate involves the judgment, decision, and cited documents rather than hundreds of discovery documents or an entire court file, and the hiring of an additional translator doesn't appear to be a prerequisite to Heraeus's pursuit of other enforcement actions, the court can't find that

14

Heraeus has established good cause for modification of the protective orders in this regard. If Heraeus is able to identify another translator/translation service that is agreeable to Biomet and Esschem and agreeable to working within the confidentiality requirements of the protective order, the court would approve Heraeus's request.

CONCLUSION

Throughout the proceedings on the motion for modification, Heraeus has assured the court, Biomet, and Esschem that if the documents at issue are removed from the scope of the protective orders, the contents of those documents won't be disclosed to the public. Heraeus insists that the confidential information in the documents belongs to Heraeus, so the documents won't be submitted to any tribunal if a risk of public disclosure exists because the consequences would be too severe for Heraeus.

Throughout these proceedings, as well, Biomet and Esschem have indicated that they are willing to negotiate appropriate amendments to the protective orders, *i.e.*, less drastic alternatives than completely removing the nine documents from the requirements of the protective orders. Biomet and Esschem, however, haven't suggested any "alternatives" that would strike a workable solution for Heraeus's use of those documents in proceedings outside Germany.

As discussed above, Heraeus hasn't shown good cause to completely exclude the nine cited documents from the terms and conditions of the protective order or for engaging additional translation services without the approval of Biomet or Esschem, but it has shown good cause to shorten at least some of the time periods contained in the current protective order. The court believes that the parties have the same basic goal in mind: protecting their confidential information. Accordingly, the court DENIES Heraeus's motion for modification of the protective orders [docket # 165], but AFFORDS the parties until October 9, 2015 to submit an amendment to the Seventh Amended Protective Order permitting Heraeus to pursue enforcement actions outside Germany in a timely fashion without publically disclosing the confidential information contained in the cited documents. The court strongly encourages the parties to work together towards a compromise.

SO ORDERED.

ENTERED:   September 22, 2015

/s/ Robert L. Miller, Jr.
Judge, United States District Court